**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ISIAH TOWNSEND, VICTORIA TOWNSEND,
and CAMERON TOWNSEND,
Plaintiffs,
v. Case No. __________

UNITED STATES OF AMERICA,
Defendant.
____________________________________/

Robert F. Kinney (P35842)
Attorney for Plaintiffs
615 Griswold St., Ste. 1325
Detroit, MI 48226
(313) 963-5310
________________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Isiah Townsend, Victoria Townsend, and Cameron Townsend, by and through counsel, complain against Defendant United States of America pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, and state as follows:

1. This action seeks compensatory damages arising from the wrongful entry into Plaintiffs' home, armed detention, restraint, search, and related

tortious conduct of federal investigative or law-enforcement officers on May 1, 2025.

2. This Court has jurisdiction under 28 U.S.C. § 1346(b)(1). Plaintiffs allege injury caused by negligent and wrongful acts or omissions of employees of the United States acting within the scope of federal employment under circumstances in which a private person would be liable under Michigan law.

3. Plaintiffs further invoke 28 U.S.C. § 2680(h), which preserves FTCA liability for claims arising from assault, battery, false imprisonment, false arrest, abuse of process, and malicious prosecution committed by federal investigative or law-enforcement officers empowered to execute searches, seize evidence, or make arrests.

4. Venue is proper under 28 U.S.C. § 1402(b) because Plaintiffs reside in this District and the acts and omissions occurred in Southfield, Oakland County, Michigan and the dames are in excess of $75,000.00.

5. Plaintiffs separately presented Standard Form 95 administrative claims to the United States Department of Justice/Drug Enforcement Administration concerning the May 1, 2025, occurrence.

6. Those claims identified the entry into Apartment 101 at 16222 Oxley Road, the pointing of weapons, the treatment of Cameron Townsend, the

search of the residence, damage to the front door, and resulting emotional injuries, and each demanded a sum certain.

7. The Drug Enforcement Administration acknowledged receipt of the administrative claims and subsequently issued a written final denial. Plaintiffs have therefore satisfied the administrative prerequisite of 28 U.S.C. § 2675(a).

8. Plaintiff Isiah Townsend is an adult Michigan resident who, at all relevant times, resided at 16222 Oxley Road, Apartment 101, Southfield, Michigan.

9. Plaintiff Victoria Townsend is an adult Michigan resident who, at all relevant times, resided at the same address.

10. Plaintiff Cameron Townsend is an adult Michigan resident who, at all relevant times, resided at the same address.

11. Plaintiffs and/or members of the Townsend household had continuously resided at that location for more than ten years before the occurrence.

12. Defendant United States of America is the proper defendant for the FTCA claims arising from acts and omissions of federal employees acting within the scope of their employment.

## FACTUAL ALLEGATIONS

13. On May 1, 2025, at approximately 8:30 a.m., federal law-enforcement officers associated with the United States Department of Justice and Drug

Enforcement Administration arrived at Plaintiffs' residence at 16222 Oxley Road, Apartment 101, Southfield, Michigan.

14. Plaintiffs were not the persons sought in the federal operation, and their residence was not the residence of the actual target.

15. The actual target was located across the street in the same apartment complex at 16225 Oxley Road, Apartment 104.

16. Thus, the target location differed from Plaintiffs' home in both the street address—16225 rather than 16222—and the apartment number—104 rather than 101.

17. Before Plaintiffs were afforded a reasonable opportunity to open their door, the officers forcibly opened the front door and entered Plaintiffs' home.

18. The forced entry damaged the front door.

19. Upon entry, officers pointed firearms, including AR-15-style firearms, at Plaintiffs.

20. Plaintiffs were occupants of their own home and had committed no crime that justified the detention, restraint, handcuffing, search, or force alleged herein.

21. Officers ordered Cameron Townsend to his knees while firearms were pointed at him.

22. Cameron complied. Officers handcuffed him and, pursuant to their instructions, required him to move into the hallway while remaining on his knees.

23. Victoria Townsend was not fully dressed when the officers entered the residence.

24. Officers did not permit Victoria to dress herself before continuing the detention and law-enforcement activity.

25. During the encounter, an officer stated words to the effect, “If you don’t cooperate it will not turn out well.”

26. All three Plaintiffs were placed in handcuffs.

27. The officers searched Plaintiffs’ apartment.

28. Plaintiffs did not consent to the forced entry, armed detention, handcuffing, search, or other intrusions alleged herein.

29. The officers’ conduct continued despite the existence of materially different address information distinguishing Plaintiffs’ long-term residence at 16222 Oxley Road, Apartment 101, from the actual target at 16225 Oxley Road, Apartment 104.

30. While outside, Cameron Townsend heard one of the officers admit, in substance, “wrong apartment.”

31. The officers' recognition that they were at the wrong apartment confirmed that Plaintiffs and their residence were not the intended targets of the operation.

32. As a direct and proximate result, Plaintiffs experienced fear, shock, humiliation, embarrassment, emotional distress, loss of dignity, loss of the sense of security and privacy in their home, and other compensable injury, together with property damage associated with the forced entry.

33. After entry, Cameron Townsend heard an officer acknowledge, in substance, "wrong apartment," further supporting Plaintiffs' allegation that the officers themselves ultimately recognized that the residence they entered was not the intended target premises.

34. Upon information and belief, there were no unique physical descriptors, prior observations, surveillance information, photographs, or other particularized facts concerning Plaintiffs' residence that independently established that Apartment 101 at 16222 Oxley Road was the premises associated with the object of the search.

35. The entry and search therefore were not merely the product of a minor discrepancy concerning an otherwise correctly identified unit. The officers entered a different street address and a different apartment number from the location associated with the actual target.

36. Nevertheless, without an independent factual basis establishing probable cause concerning Plaintiffs' residence, the officers forcibly breached Plaintiffs' door, entered with AR-15-style firearms pointed at the occupants, handcuffed all three Plaintiffs, searched the apartment, and subjected Plaintiffs to the restraints and treatment described above.

37. Reasonable verification of the street number and apartment number before forced entry would have disclosed that the officers were positioned at 16222 Oxley Road, Apartment 101, rather than the target location at 16225 Oxley Road, Apartment 104.

38. Before forcibly entering Plaintiffs' residence, the officers knew or reasonably should have known from the warrant, supporting materials, operational briefing, surveillance, prior observations, address information, apartment designation, or other information actually available to the operation that the premises they intended to search were required to correspond to the premises identified by their investigation and warrant authority.

39. Accordingly, probable cause concerning the target or target premises did not, without additional particularized facts establishing a nexus to Plaintiffs' separate residence, provide a factual basis to search Plaintiffs' home.

40. To the extent a search warrant had been obtained for the operation, Plaintiffs allege upon information and belief that the facts and observations submitted to obtain that warrant concerned the intended target and the premises associated with that target, not Plaintiffs or Plaintiffs' residence at 16222 Oxley Road, Apartment 101.

41. Plaintiffs had resided at 16222 Oxley Road, Apartment 101, for more than ten years, and the officers had no prior observations of Plaintiffs' residence that independently established probable cause to search that location.

42. Upon information and belief, the officers possessed no information establishing probable cause to believe that evidence of a crime, contraband, instrumentalities of a crime, or the person who was the actual target of the operation would be found inside Plaintiffs' residence.

43. Upon information and belief, the officers possessed no information establishing a nexus between Plaintiffs' residence at 16222 Oxley Road, Apartment 101, and the criminal activity that formed the basis for the law-enforcement operation.

44. Upon information and belief, the officers had not conducted surveillance or made prior observations establishing that criminal activity had occurred, was occurring, or was likely to occur inside Plaintiffs' residence.

45. Prior to forcibly entering Plaintiffs' residence at 16222 Oxley Road, Apartment 101, the federal officers had not observed Plaintiffs engaging in criminal activity at or around their residence.

46. Plaintiffs allege that any failure to discontinue such conduct with reasonable promptness after recognition of the wrong-premises entry constituted a separate operational act or omission from the initial decision to plan or undertake the law-enforcement operation.

47. Once the officers actually recognized that they had entered the wrong apartment, any continued search, detention, handcuffing, pointing of firearms, movement of the occupants, or other restraint required an independent lawful justification.

48. After the officers entered, Cameron Townsend heard an officer acknowledge, in substance, "wrong apartment." Once that mistake was actually recognized, the officers had objective notice that the premises and occupants were not those intended for the operation.

49. The forced entry exposed innocent occupants of the wrong residence to the foreseeable consequences of an armed residential raid, including the breach of their door, firearms pointed at them, handcuffing, physical restraint, a search of their home, and invasion of personal privacy.

50. Plaintiffs further allege that this was not a circumstance in which a technically inaccurate street number nevertheless described the correct

premises through unique physical descriptors. The officers actually entered and searched a separate residence occupied by persons who were not the intended targets.

51. Plaintiffs allege that the officers failed to observe, compare, communicate, verify, or act upon objective identifying information available before entry that would have disclosed that the entry team was positioned at a residence different from the premises associated with the actual target.

52. Plaintiffs allege that reasonable use of those objective identifiers would have disclosed before entry that 16222 Oxley Road, Apartment 101, was not 16225 Oxley Road, Apartment 104, and that the two locations were situated across the street from one another.

53. Before the forced entry, the officers had readily available objective means to determine whether they were positioned at the premises identified for the operation, including the street number, apartment number, physical location of the building, warrant information, operational materials, surveillance information, photographs, briefing information, and information developed during the investigation.

54. In undertaking and carrying out an armed residential law-enforcement operation, the responsible officers and employees were required to exercise reasonable care toward innocent occupants and their property to the extent

imposed by applicable Michigan tort law and not displaced by an FTCA exception.

55. Having undertaken to execute law-enforcement activity at a particular residence, the officers were required to use reasonable care in identifying and distinguishing the premises at which they intended and were authorized to act before employing forced entry and armed restraint against the occupants.

56. The need for reasonable address and unit confirmation was particularly significant because the operation occurred in an apartment complex containing multiple buildings and units, where entry into the wrong unit foreseeably exposed innocent occupants to armed force, restraint, property damage, and search.

57. Before forcibly entering a residence, reasonable operational care included comparing the location at which the entry team had assembled with the address and apartment number contained in the warrant and/or operational information actually provided to the officers.

58. Reasonable operational care also included observing and confirming readily ascertainable building numbers, street addresses, apartment numbers, unit identifiers, or other physical markers before breaching the door.

59. The officers were required to use reasonable care in communicating material information identifying the intended premises among members of the operational and entry teams so that the officers making entry were directed to the correct location.

60. Where available operational materials, briefings, surveillance information, photographs, or other identifying information distinguished the intended location, the officers were required to exercise reasonable care in using that information rather than proceeding against a materially different residence.

61. The officers were required to distinguish Plaintiffs' residence at 16222 Oxley Road, Apartment 101, from the target location at 16225 Oxley Road, Apartment 104. The addresses were not identical or merely different units within the same building; both the street number and apartment number differed, and the target was across the street.

62. Absent independent lawful justification, officers were required to refrain from intentionally entering, remaining in, or searching a residence that was not the premises they were authorized or intending to search.

63. Once facts arose indicating that the officers might have entered the wrong residence, reasonable care required reassessment of the basis for continuing the detention, pointing of firearms, handcuffing, restraint, and search.

64. Once the officers knew that Plaintiffs' apartment was the wrong apartment and that Plaintiffs were not the persons sought, the officers were required, absent an independent lawful basis, to discontinue further detention, restraint, search, and use of force with reasonable promptness.

65. In carrying out any otherwise authorized entry and detention, the officers were required to exercise reasonable care to avoid unnecessary bodily restraint, emotional injury, humiliation, and damage to the property of innocent occupants.

66. The officers were required to exercise reasonable care in the deployment and pointing of firearms and to avoid unnecessarily maintaining AR-15-style firearms trained upon occupants when circumstances no longer reasonably required such force.

67. The officers were required to exercise reasonable care in restraining and moving Cameron Townsend and to avoid unnecessary physical and dignitary injury in ordering him to his knees, handcuffing him, and requiring him to move into the hallway while remaining on his knees.

68. After encountering Victoria Townsend partially undressed, the officers were required to act with reasonable care for her bodily privacy and dignity, including reasonably accommodating an opportunity to dress when consistent with legitimate safety needs.

69. The officers were required to reassess whether continued handcuffing of Isiah, Victoria, and Cameron Townsend remained reasonably necessary after the premises had been secured and information demonstrated that they were not the intended targets.

70. The officers were required to exercise reasonable care with Plaintiffs' residence and property and to avoid unnecessary destruction of the entrance door, particularly if the occupants could safely be afforded a reasonable opportunity to open the door.

71. Plaintiffs allege these operational duties as duties of reasonable care under applicable Michigan tort principles. To the extent discovery identifies a specific federal warrant term, mandatory directive, operational order, policy, checklist, or instruction prescribing a required course of conduct, Plaintiffs reserve the right to identify and plead that mandatory requirement with greater specificity.

72. Plaintiffs do not base their negligence claim solely upon a generalized contention that federal agents should have conducted a better criminal investigation. The challenged conduct includes the operational execution of the entry at a materially different residence and the manner in which the officers treated innocent occupants before and after the wrong-location error became or should have become apparent.

73. The officers breached the foregoing duties by failing to reasonably distinguish 16222 from 16225 Oxley Road; failing to distinguish Apartment 101 from Apartment 104; proceeding at the wrong residence; failing to use reasonable operational measures to confirm the location before forced entry; and failing to respond reasonably when the wrong-location error became apparent.

74. They further breached applicable duties by forcibly opening Plaintiffs' door before allowing a reasonable opportunity for the occupants to open it; entering and searching the wrong apartment; pointing AR-15-style firearms at Plaintiffs; handcuffing all three Plaintiffs; forcing Cameron to his knees and requiring him to move in that position; refusing to permit Victoria reasonably to dress; and continuing restraint or force after any legitimate basis for doing so had dissipated.

75. The discrepancy was capable of objective verification by comparing the building and apartment identifiers with the address information associated with the intended target. The actual target was across the street at a different street number and different apartment number.

76. Cameron's observation that an officer acknowledged "wrong apartment" is consistent with Plaintiffs' allegation that the officers ultimately recognized the operational error.

77. The foregoing acts and omissions directly and proximately caused the forced entry, property damage, armed detention, handcuffing, search, humiliation, fear, emotional distress, and other injuries alleged by Plaintiffs.

78. To the extent discovery establishes that the warrant, affidavit, operational plan, DEA policy, DOJ directive, briefing instruction, or entry-team protocol imposed a specific mandatory method of confirming the target location or responding to a wrong-premises entry, Plaintiffs reserve the right to amend these allegations to identify those mandatory requirements specifically.

79. The officers also had a continuing duty to reassess the factual and legal basis for their actions as new information became known during execution. Once the officers discovered or acknowledged that they were at the "wrong apartment," reasonable operational care required them to cease, without unreasonable delay, any continued search, restraint, display of force, or detention not supported by an independent lawful basis.

80. Plaintiffs therefore allege that the entry into their residence was not merely the execution of a warrant containing a technical address discrepancy, but an operational entry into a separate residence for which the officers lacked particularized information connecting that residence to the object of the search.

81. The difference between the two locations was material and objectively verifiable before entry: the residences had different street numbers, different apartment numbers, and were located across the street from one another.

82. The officers further breached applicable duties by failing to reasonably compare the premises immediately before them with the address, apartment number, surveillance information, prior observations, photographs, warrant information, operational briefing, and other identifying information actually available before the entry team forcibly breached Plaintiffs' door.

83. The officers breached those duties by proceeding at 16222 Oxley Road, Apartment 101, although the actual target was associated with 16225 Oxley Road, Apartment 104, and although Plaintiffs allege there were no independent prior observations or particularized facts establishing probable cause concerning their residence.

84. Where the investigation developed surveillance, prior observations, photographs, informant information, address data, or other pre-warrant information concerning the target premises, reasonable operational care required the entry team to use that information in matching the intended location to the premises actually entered.

85. The officers further had a duty not to treat probable cause relating to one person, apartment, or street address as a factual basis to search a

separate residence absent particularized information connecting that separate residence to the object of the search.

86. The officers had a duty, to the extent imposed by applicable Michigan law and consistent with the FTCA, to execute the operational entry at the particular premises actually identified by the warrant and supporting investigation and to use reasonable care in identifying those premises before employing forced entry.

87. Plaintiffs allege that verifying the street number and apartment number immediately before forced entry, following any mandatory target-identification directive, and communicating an acknowledged wrong-apartment error are concrete operational acts capable of proof through the warrant, operations plan, policies, training materials, briefing records, radio traffic, body-camera recordings, reports, and testimony.

88. After actual recognition of the wrong-premises entry, reasonable care required immediate communication of that fact to all participating officers and prompt termination of any search, detention, restraint, or display of force not supported by an independent lawful basis.

89. Plaintiffs further allege that decisions made after the officers actually recognized that they had entered the wrong apartment must be analyzed separately from pre-entry planning. At that point, the known wrong-premises fact materially changed the circumstances confronting the officers.

90. Plaintiffs allege, in the alternative, that failures to comply with any such mandatory target-verification or warrant-execution requirement were operational violations rather than protected policy choices.

91. To the extent a DEA or DOJ directive, operations plan, target-verification procedure, entry-team checklist, briefing instruction, supervisor command, or other mandatory requirement prescribed a specific method of confirming the target location, the responsible officers lacked discretion to disregard that prescribed course of action.

92. To the extent the warrant itself identified a particular address, apartment, building, photograph, map, physical description, or other objective identifier, the entry team was required to execute the operation consistently with the scope and particular premises authorized by that warrant.

## COUNT I – FALSE IMPRISONMENT / FALSE ARREST

93. Plaintiffs incorporate paragraphs 1–92.

94. Federal investigative or law-enforcement officers intentionally confined and restrained Plaintiffs by pointing firearms at them, issuing coercive commands, handcuffing all Plaintiffs, and controlling their movement.

95. Plaintiffs did not consent to the confinement.

96. Plaintiffs allege that, because they were innocent occupants of a materially different apartment and were not the persons sought, the

confinement lacked lawful justification once no independent basis existed for detaining them.

97. The United States is liable to the extent provided by 28 U.S.C. §§ 1346(b) and 2680(h) and Michigan law.

98. Plaintiffs suffered emotional and phycological damages, compensable damages as a direct and proximate result of the conduct listed above.

**COUNT II – ASSAULT**

99. Plaintiffs incorporate paragraphs 1–98.

100. By forcibly entering the home, pointing AR-15-style firearms at Plaintiffs, issuing coercive commands, and stating that failure to cooperate would not "turn out well," the officers intentionally caused Plaintiffs reasonably to apprehend immediate harmful or offensive contact.

101. The threatened force was not consented to and, as alleged, was not legally justified.

102. The United States is liable under the FTCA law-enforcement proviso and Michigan law for resulting damages.

**COUNT III – BATTERY**

103. Plaintiffs incorporate paragraphs 1–102.

104. The officers intentionally subjected Plaintiffs to harmful or offensive physical contact, including handcuffing and physically controlling their bodies and movement.

105. As to Cameron, officers forced him to his knees, handcuffed him, and required him to move into the hallway on his knees.

106. The contacts were without consent and, as alleged, without lawful justification.

107. The United States is liable under the FTCA law-enforcement proviso and Michigan law for resulting damages.

## COUNT IV – TRESPASS / WRONGFUL ENTRY

108. Plaintiffs incorporate paragraphs 1–107.

109. Plaintiffs lawfully possessed and occupied Apartment 101 at 16222 Oxley Road as their home.

110. Federal officers intentionally entered the physical premises occupied by Plaintiffs and remained there to conduct a search.

111. Plaintiffs did not consent to that entry.

112. The intended target was associated with a materially different address—16225 Oxley Road, Apartment 104—across the street.

113. To the extent the officers lacked legal authorization or privilege to enter or remain in Plaintiffs' apartment, the intentional physical entry constituted an unauthorized intrusion upon Plaintiffs' possessory interests under Michigan law.

114. Plaintiffs suffered property damage and other compensable injury as a direct and proximate result.

## COUNT V – INTRUSION UPON SECLUSION / INVASION OF PRIVACY

115. Plaintiffs incorporate paragraphs 1–114.

116. Plaintiffs possessed a substantial privacy interest in the interior of their long-term home, their private affairs, and, as to Victoria, her bodily privacy while partially undressed.

117. The forced armed entry, detention of the occupants, search of the residence, and treatment of Victoria constituted an intrusion into private matters and spaces.

118. Plaintiffs allege that the manner of intrusion was objectionable and highly offensive to a reasonable person.

119. The United States is liable under 28 U.S.C. § 1346(b)(1) to the extent Michigan law imposes private-person liability under like circumstances and the claim is not excluded by an FTCA exception.

## COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

120. Plaintiffs incorporate paragraphs 1–119.

121. Plaintiffs allege that forcibly entering a materially different residence, pointing AR-15-style firearms at innocent occupants, handcuffing all occupants, forcing Cameron to move on his knees, refusing to allow Victoria reasonably to dress, threatening the occupants, and searching the wrong

apartment constituted extreme and outrageous conduct under the circumstances alleged.

122. The officers intended to cause emotional distress or acted in reckless disregard of the probability that severe emotional distress would result.

123. Plaintiffs suffered severe fear, shock, humiliation, embarrassment, and emotional distress as a direct and proximate result.

124. The United States is liable to the extent permitted by the FTCA and Michigan law.

## COUNT VII – NEGLIGENCE

125. Plaintiffs incorporate paragraphs 1–124.

126. Independently and in the alternative to Plaintiffs' intentional-tort theories, federal employees acting within the scope of their employment owed Plaintiffs duties of reasonable care cognizable under applicable Michigan law when operationally executing law-enforcement activity that foreseeably affected innocent occupants, their bodily security, privacy, and property.

127. The officers breached their duty of reasonable operational care by failing to reasonably identify and distinguish the premises at which they intended and were authorized to act before employing forced entry and armed restraint.

128. They breached that duty by failing to reasonably compare the location of the entry team with the street address and apartment number associated with the intended target and by failing to reasonably observe or confirm readily ascertainable building and unit identifiers.

129. They breached applicable duties by failing to reasonably communicate and use material target-location information among the officers participating in the operation, thereby permitting an armed entry team to proceed at 16222 Oxley Road, Apartment 101, rather than the target location at 16225 Oxley Road, Apartment 104.

130. They breached applicable duties by failing to reasonably respond to the conspicuous discrepancy between the two locations, including different street numbers, different apartment numbers, and their placement across the street from one another.

131. They breached applicable duties by forcibly opening Plaintiffs' front door before Plaintiffs were afforded a reasonable opportunity to open the door, thereby damaging the property and escalating the encounter with innocent occupants.

132. They breached applicable duties by failing to reassess promptly the justification for continued detention, handcuffing, pointing of firearms, and search when circumstances indicated or established that the officers were at the wrong apartment.

133. Once the officers knew that they had entered the wrong apartment, they breached applicable duties by failing, to the extent alleged and proven, to terminate without unreasonable delay any detention, restraint, search, or use of force unsupported by an independent lawful basis.

134. They breached applicable duties in the manner in which firearms were deployed and maintained against Plaintiffs, including unnecessarily pointing AR-15-style firearms at innocent occupants when such force was not reasonably necessary.

135. They breached applicable duties in their treatment of Cameron by forcing him to his knees, handcuffing him, and requiring him to move into the hallway while remaining on his knees when such treatment was unnecessary under the circumstances.

136. They breached applicable duties in their treatment of Victoria by failing reasonably to accommodate her privacy and dignity after encountering her partially undressed and by not allowing her reasonably to dress when that could be accomplished consistently with legitimate safety concerns.

137. They breached applicable duties by handcuffing all three Plaintiffs and by failing to reassess whether continued restraints remained necessary after the residence was secured and the officers learned or should have learned that Plaintiffs were not the intended targets.

138. They breached applicable duties by failing to exercise reasonable care for Plaintiffs' property and by causing unnecessary damage to the entrance door during an entry at the wrong residence.

139. Plaintiffs allege that the operational address-verification failures, manner-of-entry failures, post-entry failures to reassess, and treatment of the innocent occupants were substantial factors in producing Plaintiffs' injuries.

140. The negligence alleged herein is not intended merely to relabel assault, battery, false imprisonment, or false arrest. It is pleaded independently and in the alternative to the extent the evidence establishes negligent operational acts or omissions for which Michigan law would impose private-person liability.

141. Nor is Count VII based solely upon an abstract allegation of negligent investigation. Plaintiffs challenge concrete operational conduct in carrying out the residential entry and the officers' conduct after the material location discrepancy became or should have become apparent.

142. To the extent discovery establishes that a specific warrant provision, operational order, mandatory DEA or DOJ directive, checklist, briefing instruction, or other non-discretionary requirement prescribed how the location was to be confirmed or how the entry was to be conducted, Plaintiffs

reserve the right to amend or particularize this count based upon that evidence.

143. The foregoing breaches directly and proximately caused damage to Plaintiffs' residence and caused Plaintiffs to suffer fear, shock, humiliation, embarrassment, emotional distress, loss of dignity, disruption of the security and privacy of their home, and other compensable damages.

144. Defendant United States is liable under 28 U.S.C. § 1346(b)(1) for actionable negligent acts and omissions of its employees committed within the scope of federal employment to the extent Michigan law would impose liability upon a private person under like circumstances and no FTCA exception applies.

145. As a direct and proximate result of the foregoing conduct, Plaintiffs suffered past and continuing emotional distress, fear, humiliation, embarrassment, loss of dignity, inconvenience, disruption of the sanctity, privacy, and security of their home, and other non-economic damages.

146. Plaintiffs also seek proven property damages and all other compensatory damages recoverable under the FTCA and Michigan law, subject to 28 U.S.C. § 2675(b).

147. Plaintiffs do not seek punitive damages against the United States.

WHEREFORE, Plaintiffs respectfully request that judgment be entered in their favor and against Defendant United States of America for compensatory damages in an amount to be determined by the Court, subject to the limitations of 28 U.S.C. § 2675(b); taxable costs as permitted by law; and such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial only as to any claim for which a jury trial is legally available. Plaintiffs acknowledge that claims against the United States under the FTCA are tried to the Court pursuant to 28 U.S.C. § 2402.

/s/Robert F. Kinney (P35842)
Attorney for Plaintiff
615 Griswold St., Ste. 1325
Detroit, MI 48226
(313) 963-5310

Dated: September 22, 2026